**JUNIOR LUNCH CLUB ENTERPRISES, INC., Plaintiff-Appellee,**

v.

**AMERICAN BROADCASTING–PARAMOUNT THEATRES, INC., Defendant-Appellant.**

No. 13246.

United States Court of Appeals Seventh Circuit.

June 30, 1961.

Rehearing Denied July 25, 1961.

Berle L. Schwartz, John B. Moser, Chicago, Ill., for appellant.

Joseph C. Owens, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

This diversity action for breach of contract was filed in the district court by plaintiff Junior Lunch Club Enterprises, Inc. against defendant American Broadcasting-Paramount Theatres, Inc. After a trial before the court without a jury, the court found that defendant had breached its contract with plaintiff and found that the damages resulting from such breach were $27,240.62. From the trial court's judgment to this effect, defendant appeals, attacking the court's findings of fact and the damages awarded to plaintiff.

Concisely, we set out the factual situation from which the trial court made its findings of fact.

Plaintiff is a corporation engaged in the business of selling and producing juvenile entertainment programs for presentation over television stations. Defendant is a corporation engaged in the business of operating and managing television stations in Chicago and in other cities.

On May 13, 1958, two representatives of plaintiff met with two local agents of defendant to make a presentation of plaintiff's proposed television program, "Junior Lunch Club." At such time an oral contract between the parties was entered into whereby plaintiff was employed to furnish to defendant complete lunchtime juvenile television programs, including talent, film, props, special sets and all other material including script and all necessary clerical work, as well as promotional material in connection with the merchandising and promotion of future sponsors' products. The contract was to run for a definite cycle of twenty-six weeks, commencing with the first program to begin on August 18, 1958. Defendant promised to pay plaintiff a commission of $1200 per week for plaintiff's services.

The oral agreement was memorialized in a letter of June 10, 1958 from defendant's agent to plaintiff. In this written agreement it was stated, "The time of the program will be designated by us and it is tentatively scheduled to run from 12:00 noon to 12:30 p. m."

From the time of the oral agreement on May 13, 1958 until August 18, 1958, plaintiff devoted its full efforts to the preparation and promotion of this television program alone.

However, on July 22, 1958, the local agents of defendant found that they were unable to honor their agreement to present plaintiff's program during the lunch hour because of a change in policy by defendant's New York officials. Plaintiff was notified by letter to this effect:

"Regarding your deal with us and its possibility of being worked out successfully, my trip to New York only served to uncover circumstances that tend to sadden me considerably, and depress the probabilities of our mutual venture being a success.

"Here's why: The network made it very clear that the O&O stations and affiliates will be expected to program only on a temporary basis in the 11:30 to 12:00 slot because it has plans to fill that time shortly— probably news of an additional program going in there will be forthcoming before October 6th, when

the whole daytime invasion gets under way.

"The reason the network is purposely slotting an adult show at 12:00 Noon where, generally, kid lunch time shows hold sway, is because the network is not after any more kid advertisers.

"They feel they have too many now; they also feel they may take a walloping from these lunch time kid shows around the country, but they would prefer to get as much adult audience as possible—loaded with kids of course and go after adult products. The network is still mindful that it has had to cut back Mickey Mouse to thirty minutes a day because of a seeming shrinkage of kid advertisers and it is going more definitely after adult advertisers in the daytime.

"So, as I see it, Johnny, you are dead on both accounts. We may bearly [*sic*] only get started in the 11:30 spot and you will be stamped out. The major hope, of course, is that Y&R takes enough shine to your show to use its best efforts of persuasion to sell it to our guys at the network. Failing this, I can only, and most reluctantly, suggest that you do one of two things: 1. Deliver it to WGN and stick to your guns for a noon effort, or a 11:30 strip and be, therefore, confident of a large uninterrupted run. 2. Remove your sights from the 11:30 strip idea because I am afraid you will be dead with all of the ABC affiliates, which removes a big block of potential buyers from your list, and come in and sit down with us and discuss a radical revamping of the format to put you on at a time when you can have a fighting chance to go after enough stations to make this a syndicated success.

"I am not saying that we will not live up to our contract to the best of our ability, but it appears unquestionably now that our hands are tied and we cannot live up to our contract because of network intervention.

"I know you will agree that this is a matter deserving of your most earnest thoughts and after you have mulled everything over, please come in * * * and discuss the matter * * *."

Pursuant to such invitation to discuss a "radical revamping of the format" of plaintiff's show or a resetting of the time for the show, in early August agents of plaintiff and defendant met to discuss these problems. However, no radical revamping was agreed to; defendant offered, and plaintiff rejected, alternative thirty minute time periods commencing at 8:00 a. m., 8:30 a. m., 11:00 a. m. and 1:30 p. m. On August 18, 1958, plaintiff was prepared to present its first installment of "Junior Lunch Club" consistent with its agreement, but defendant provided no opportunity for such programming within the lunch hour.

We hold that the trial court's finding that defendant breached its contract with plaintiff is not "clearly erroneous" within the provisions of Rule 52(a), F.R. Civ.P., 28 U.S.C.A. Indeed, the local agent of defendant indicated such conclusions when he wrote plaintiff on July 22 that "we cannot live up to our contract because of network intervention."

We have examined the court's schedule of damages set out in its findings. Such damages extend from the inception of the oral contract on May 13 to the date plaintiff agreed to present its first program, August 18. Since during that period plaintiff was devoting its total efforts to the creation and promotion of "Junior Lunch Club" in contemplation of fulfilling its agreement with defendant, all such expenditures are allocable to the contract which defendant breached and are properly within the measure of recovery afforded plaintiff.

We find no merit in defendant's contentions that the trial court erred in permitting the recovery of items of expense incurred by plaintiff not necessary to the performance of its contract with defend-

ant or in otherwise failing to reduce the amount of plaintiff's award.

The judgment of the district court is affirmed.

Affirmed.